Welcome to the 4th Circuit. We have three cases we're hearing this morning. And we'll start with Lewis v. Caraballo and Mr. Pickus. Is it? Did I pronounce that right? You did. Thank you, Your Honor. Go ahead, sir. Good morning. My name is Phil Pickus. I'm Assistant Attorney General in the Maryland Office of the Attorney General. I'm here on behalf of Maryland State Trooper Kevin Caraballo. May it please the Court. This was a reasonable use of force captured on video. There are no reasonable inferences that can be drawn from this video to suggest the force was excessive. Trooper Caraballo was responding to a report of a physical domestic assault. When he arrived on the scene, he found Mom in tears. And Mom informed Trooper Caraballo that her son, Mr. Lewis, the plaintiff in this case, had just physically assaulted her. Trooper Caraballo tried to talk to Mr. Lewis, but he did not cooperate and made aggressive gestures. Trooper Lewis, after Officer Ray had arrived on the scene, then tried to detain Mr. Lewis. Mr. Lewis consistently resisted efforts to be detained. Trooper Caraballo methodically went through his use of force progression, starting with muscling techniques while he was down on the ground wrestling with Mr. Lewis. He then tried elbow strikes. He then tried knee strikes, but none of that worked. Can I ask you a question? Do you think it was reasonable for the two officers to, for lack of a better term, to bum rush the 15-year-old kid and knock him to the ground instead of continuing to talk with him and try to, you know, de-escalate the situation? So, Your Honor, I think it was reasonable for that to happen. What we have here is a report of a domestic assault, and Mr. Lewis wasn't cooperating with questioning. Well, he wasn't going anywhere either. It didn't seem like he was a danger to the victim anymore. And as best the officers could tell, it didn't appear that he was armed. He's 15 years old. Did they know he was 15 years old? The record does not state that, Your Honor. I mean, he's a fairly large young man, so I get that. And he a couple of times got into a bit of a fighting stance. But, you know, he was retreating, and then all of a sudden they just kind of pounced on him, and it just went south from there. Well, Your Honor, respectfully, I don't think he was just retreating. He was backing away from them and making aggressive gestures. They did make an effort to question him, and you have to remember, the video only starts when Officer Ray arrives at the scene. Trooper Carabello had already been present for some time before Officer Ray and was already questioning Mr. Lewis, and we know that not from the video but from Trooper Carabello's declaration. One of the things that you point out that's coming up is a discussion of facts, and because this is a limited appeal, we don't typically hear interlocutor appeals, but there's an exception here when we're dealing with issues of this type, limited in the sphere. Nonetheless, we must determine it on questions of law. If there is evidence that would present a question of fact where we view it in the light most favorable, and you brought up first the video, and the characterization of what the video is was your perception, fair enough, but that's not what the law requires in order for a video to be used in an instance of this to set aside a determination of a trial judge. The Supreme Court has made it clear it must blatantly contradict the version. That might be a distinction here. This is a video. It's fuzzy. You don't know if this is so or not so. Looks like it could be. Could be the other way. That looks like it's an issue of fact. And so when you're dealing with issues of fact, we don't make that determination up here on appeal. The trial judge does that, at least through the trial process. I agree with that principle 100%, Your Honor. Which principle do you agree with? That this court should not be resolving disputes of fact on an interlocutory appeal. Do you also agree that the video must, under Supreme Court law and court of law, this circuit, be blatantly contradict Lewis's version? That is the language that the Supreme Court used in Harris. Yes, sir. Do you agree it is applicable here, that that language here applies to this case? I do. And I still think it resolves in favor of Trooper Carabello. So tell me, how does it blatantly contradict Lewis's version? We have a video. And I will say it's not the best video in the world, and it's blurry. That goes against you, that point right there. It's blurry. It's not the best video, which means you can't tell with convincing certainty that it blatantly contradicts. But proceed. If you take any gap that you believe exists in the video, and you draw any possible inference from that gap in plaintiff's favor, reasonably based on the evidence in this case, you do not get to excessive force. Well, let me make sure I understand that. You're saying that the evidence in a light most favorable to Lewis, even if you look at that alone, that's not excessive force. You don't need the video. You're saying the trial judge was just blatantly wrong himself in saying that that was sufficient to proceed beyond summary judgment. No, sir. I think the video sets certain parameters. It shows the use of force. You can say I didn't see every exact force used. You can say I didn't see exactly where the face strikes occurred, but you still see that Mr. Lewis is resisting. And you still see that Trooper Caraballo used a certain level of force. And I think it's extremely important to remember that. But it matters the level of resistance. It matters the context, as Judge Diaz pointed out, that when you have two officers, you have questions of was he being tased at the time? Where was the other officer? What was the use of the force in this instance? Five blows, so much so that this officer had to have a cast put on his hand. I guess he broke bones in his hand. Hitting this 15-year-old who's down on the ground with wild swings. In the head and the neck. I mean, to me, that seems to me to be the part of the case, factually, that's so difficult for you to overcome at this juncture. You might well do it at the trial. But where you have somebody repeatedly struck in that location of his body, and the video, we don't even know if the video was the entire encounter. We don't know when the video started. Isn't there some question as to whether there was any resistance or something going on before then? It seems to me this is just a classic jury question. The jury has to sort out all the facts. Your Honor, I think it's important to remember here that the plaintiff provided no evidence in opposition of summary judgment in this case. So there is no evidence on this record suggesting that he was injured, that he was struck in the back of the head. That evidence doesn't exist. That video was hard to watch. Watching him be struck the way he was struck. It was difficult to watch. I agree, Your Honor. I'm not going to stand here and say this was an optimal use of force. But that is not the question before the court. The question is, does it rise to the level of excessive force under Graham v. Conner? And if you actually break it down, and once you get over that initial reaction and break it down, you have a 15-year-old who had just assaulted his mother. He had committed a domestic assault. And he was no danger to his mother at that time. In fact, wasn't she off on the side? Wasn't she sitting down on some steps nearby or something? She was, yes. So she wasn't being endangered by him. Well, not at that exact moment, but the police officers had to intervene because if they walk away from this situation, he could be a danger to them. So we keep talking about how they could have just stood there or walked away or done something different. If the troopers and the police officer leave, we could have a situation where Mr. Lewis causes serious harm to his mother and his little brother. No, we don't keep talking about that. What we're saying is the jury makes that factual determination. You pose it as was it sufficient. Of course, it's the it that we don't determine. What is the it? The it is the facts of the case. We didn't determine whether it's a success or fault, but the it must be determined as to what those facts are, and that's what the disputed version. What you present sounds very compelling, sounds at least that it could be possible, I should say, very much so. And you may well yet prevail at trial. But at this stage of the game, the it is not something we can determine here. And when was he actually arrested? Did they actually arrest him, or was it after he had been hit? So I'll respond to that question first. I would suggest to the court that the first time he was detained, it was basically an investigative stop. And then they go back and talk to the mom. They see the fact that the mom is injured, and they make a more formal arrest under the Maryland Domestic Violence Act. When did they tell him he was arrested? That is not in the record, Your Honor. So there's no evidence that they even told him that he was arrested at that point, and then yet the punching occurs. Respectfully, I'm not sure the precedent would suggest when he's told he's arrested affects the reasonableness of the force. And there is no claim that there's an illegal arrest here. I'm dealing with the fact of whether he was told that, not the legal consequence of it. And that's all we're talking about is facts. That's what we're running into. I think sometimes we're dealing with cases like this where we don't fully comprehend the facts control the determination of the legal issue here. So that's why when I asked, you know, was he told that, it wasn't to say, well, if he's told that, then the arrest has this legal effect. It's the question of was he told that, which is a factor to at least consider, at least in terms of what the nature of the force is being used here and why. That's fair, Your Honor. I want to go back to the first question you asked. If there's no disputes of fact, and I agree, if there's a dispute, it's a problem for me, but if there are no disputes of fact, the level of force is a pure question of law. Correct. So I would suggest to this Court, if you look at that video, even if you think there's questions, you can resolve those questions anyway based on the evidence in this case. Wait a minute, let me understand. Even if we think there's a question of fact as to what it shows, you say we can resolve it? Well, the question of fact would be drawing an inference based on the evidence. We do that up here? Why don't we let a jury do that? Draw inferences, make determinations based upon questionable facts. But the law for summary judgment, Your Honor, is that only reasonable inferences can be drawn on plaintiff's behalf based on the record. And that is what I think is the crucial point I'm arguing here. There are no reasonable inferences that can be drawn from this record that show excessive force. Well, where is there any evidence in the record that he was constituting an immediate threat within the meaning of Graham v. Conner? I mean, they were pursuing him. They were saying, we can tase you if we want. I mean, he was backing up most of the time. I mean, at one point, he kind of made gestures in their direction. But this is conflicting, isn't it, when you have the officers pursuing him, going after him? And how is that an immediate threat? So, first of all, the officer who used the taser has not been named as a defendant in this case. It was not Trooper Caraballo. Right, I know. But still, we have to consider exactly how this came to happen. I mean, the jury has to consider this, don't they? And can't they consider the level of aggression that was being exercised in this case? Yes, Your Honor, they absolutely can. And that is one of the three Graham factors, without question. But I would also suggest he's maybe not an immediate threat to the officers, but he would, if the officers didn't intervene, be an immediate threat to his family. And the most important Graham factor is the level of resistance. And he consistently resisted their evidence. Well, let me ask you about that. So you made the point, and I think it's accurate, that the cases are clear that assuming the facts are settled, the issue of excessive force is a question of law and objective analysis of settled facts. And I go back to Judge Wynn's earlier question about the video being blurry, and it's particularly blurry and unsettled in the instance when he apparently has been tased by Officer Ray. They're down on the ground. They're struggling. But the question is, is he still actively resisting, or is he reacting to the taser? I mean, those are the kinds of questions I think a jury would need to figure out. And then as I saw the video, it happens very quickly, and I get the fact that we're sitting here in the calm of a courtroom trying to figure out whether an officer acted reasonably when he or she has very little time to think about what should be done. But if you look at that video, can you really say that it's a settled issue of fact that he was still actively resisting when the trooper launched the five punches at him? I would suggest that you can look at that video and say several things that didn't happen. The direct answer to your question is yes. I believe the video clearly shows he's still resisting and trying to get up. But what the video shows did not happen is any force used after the taser. You can't see the taser. And I'm speaking fast because I'm almost out of time, and I apologize. You can't see the taser, but you can hear it. And no more force happened. So we do not have a case where a force was used after restraint. You can also see the face strikes. And this case does not come down to whether there's an inadvertent strike to the back of the head. There's nothing from this record that would suggest deadly force. And if you're in doubt about any of this, I think we get to the second prong of qualified immunity. There is no clearly established law. Both the district court and plaintiff have to resort to cases that are unpublished or out of circuit with the level of submission is much higher than anything we have here if we look at those cases. And this is what really crystallizes this case. Does it matter if there is evidence in the light most favorably shows that he would have been cuffed or restrained? I think if there's evidence... You think that would be clearly established? Yes. Absolutely. And the law is clearly established then that it would be excessive force if there were a factual determination that he was no longer resisting. And I guess this is what Judge Wynn was getting at, right? Yes. So the clearly established aspect of your case in the excessive force argument really rests on undetermined facts. But there's no clearly established law that even gets us close to these facts. It has to be extremely specific level. You know that from Kessler, especially in excessive force.  And we need specific law. And there is no case law that the district court or plaintiff can point to that even gets us close to this case. That is kind of my bottom line here. You can draw conclusions from that video, but nothing gets us close to any established law suggesting that this force was unreasonable. They have to go out of circuit or unpublished. And the cases are all not even... They're not on point for the deadly force. Going out of circuit seems like it's pretty much there. And then there is, as you say, an unpublished case here. We can't rely on that, of course, for your right in terms of clearly established. But it is pretty much a case on point that deals with this. Let me ask you in so far as the deadly force. We haven't really defined it here. Do you have a problem with the model penal code definition? I understand that's the one used by police officers in a number of other circuits out there, with that being the basis in the Fourth Circuit on the model penal code of deadly force. Your Honor, I would suggest that the deadly force definition for purposes of Fourth Amendment excessive force law is Tennessee v. Gardner. Did a police officer believe he was in fear for his life for serious injury or another? So I would suggest that is the deadly force standard that applies here. I am out of time, so I am going to sit down. Well, you're answering our question, so you can finish the answer. Okay. I would suggest that Tennessee v. Gardner is the standard for deadly force, and we have not approached that here. And even out of... Just a quick reference. The out-of-circuit cases are not on point. The blows to the head all involve some instrument like a baton or a flashlight. I'm going to sit down now and reserve time for... Before you do, I want to hear that answer, the answer to that question I asked you about Tennessee v. Gardner. As a model penal code definition, you know what it is, and it has been used. It deals with a substantial risk of causing death or serious bodily injury. It is one that has been used in a lot of circuits and is used in every policing, as I understand, in law enforcement training, that sort of thing. Do you have a problem with us adopting that definition? It's essentially the same as Tennessee v. Gardner, so no, I do not have a problem with that. Can I follow? I'm sorry to... I know you want to... For some reason, you're eager to sit down, but we're... I'll keep talking. I wanted to ask you about the clearly established prong of the analysis, because you raised the point that there's no case directly on point. Judge Keenan responded, I think, accurately saying that it's pretty fairly well established that the use of deadly force is limited to situations where an officer is either about to suffer deadly force himself or someone else is about to suffer serious injury. And it's always a problem, because you don't want to get too general with the principle, but not too specific. I mean, it's not... You don't need a case on all fours. But don't you... I would hope you would concede that if a jury were to find, based on this video, that at the time that the officer, the state trooper, punched this 15-year-old kid four or five times, if they were to conclude that he was not actively resisting, that would be excessive force, wouldn't it? Yes, I do, but I would suggest to your court... I concede that point, but I don't believe the point applies to this case, because I don't believe any reasonable fact finder could draw that conclusion from this videotape. All right.  Thank you, Your Honor. We'll hear from the appellee. Mr. Seidel. Thank you, Your Honor, and may it please the court. Charles Seidel for Plaintiff Appellee Cameron Lewis. Despite the presentation today, there is only one issue before the court. If we take the facts as the district court gives them to us and review those facts, in light most favorable to the non-moving party, are the defendant officers still entitled to qualified immunity? The answer, as the district court correctly held, was yes. I'm sorry, was no. Case law from this court and other circuits clearly established that an officer cannot constitutionally repeatedly punch an unarmed arrestee in the head, especially in the back of the head. In the absence of some imminent threat to the officers or to someone else, repeated punches to the head are excessive force, which is evident from the district court's careful analysis in this case. So the lawyer on the other side makes the point that this video, that there are cases in which if you show a video and that video blatantly contradicts the proffered version that's from the plaintiff here, that is enough to say it does not meet it. That's true, Your Honor. But this court explained that Scott v. Harris did not abrogate the traditional summary judgment analysis in Witt v. West Virginia State Police. And under that traditional analysis, the court must ordinarily accept the plaintiff's account of events. Instead, Scott stands for a narrow and unremarkable proposition that when objective and incontrovertible evidence, like a video recording, so blatantly contradicts a plaintiff's account that no reasonable juror could ever accept it, then in that situation there is no genuine dispute as to material facts. And in this interlocutory posture, this court's ability to depart from the district court's factual conclusions and to question the reasonability of the district court's factual inferences is jurisdictionally limited to that narrow inquiry, whether the video so blatantly contradicts the allegations of the complaint that no reasonable juror could hold in Lewis's favor. So can I ask, so the video, the district court, I guess one of the critical disputed issue of fact is whether or not your client was resisting arrest during the entire incident. Is that right? Yes, Your Honor. So, you know, the problem I have with this case is that you look at that video, it happens so quickly and there clearly is a lot of movement, officers are trying to corral the young man and he just seemed to be moving around a lot. And the question is, are we supposed to hold these officers to some kind of exacting standard? Again, we're here in this courtroom deliberating and thoughtfully thinking about this, but they don't have the time to think about this. They've got two officers on the young man, they're trying to subdue him, and he decides, rightly or wrongly, that he's got to use, he's got to escalate the level of force. That may have been negligent, but why is it unreasonable? And why should this officer, given the admonition that the Supreme Court has told us, that only the most incompetent of officers should be held liable in scenarios like this? Why does he fall in that category? Your Honor, even if that were a plausible interpretation of the video here, it certainly isn't the only one. And because Scott does not abrogate the summary judgment analysis, inferences and ambiguities must be resolved in favor of the non-moving party at this early stage in litigation. And so it isn't enough that the video provides some support for the... Right, but the countervailing principle there, too, is that qualified immunity, if an officer is in fact entitled to qualified immunity, he's entitled to it at the earliest opportunity to avoid trial, right? So we've got these competing principles, and if you've got this video that just, I mean, is all over the place, and you've got to... Tell me how long was the entire, that snippet of the, I forget how long it was. It wasn't very long. The entire takedown to handcuffing is less than 20 seconds. Okay. So 20 seconds for an officer to react to a scuffle on the ground, and you're suggesting that because he decided to escalate the level of force, he's on the hook. Well, so two points, Your Honor. One, the unclarity of the video cuts in Lewis's favor here. It's exactly the same situation this court encountered in Witt, where it was difficult to tell from the video what had actually happened. And because there were factual disputes, the court had to deny qualified immunity, because it can only reverse a denial of qualified immunity if the video so blatantly contradicts the account that it can't be believed. And that just simply isn't the case here. And because everyone here seems to acknowledge that the video is unclear at some points, does leave some factual questions unresolved, there simply can't be a successful Scott versus Harris challenge to the district court's conclusion below. But second, this court established in Armstrong that this court's precedent leads to the conclusion that a police officer may only use serious injurious force when an objectively reasonable officer would conclude that the circumstances present a risk of immediate danger that could be mitigated by the use of the force. And one thing that is not present in this record at all is any allegations that the officers had any risk of immediate danger to themselves or feared any risk of immediate danger to anyone else. There's no statement in Officer Caraballo's declaration to that effect, and the only way to arrive at that from the video would be to draw an inference in Officer Caraballo's favor, which the court is not permitted to do at this stage in litigation. Because the officers did not express any fear of risk to themselves or risk to anyone else, this court's precedent, the Supreme Court's precedent, and a consensus of circuit court's precedent prevent them from using severe injurious force or deadly force. Are you saying that they would have had to mechanically say I feared harm to myself in order to satisfy that requirement here? They're engaged in a scuffle with someone who they wanted detained to investigate. All manner of things could happen. He could have gone for their guns. So, Your Honor, one thing we know from this court's cases is that physical resistance to arrest is different from violent resistance to arrest that rises to the level that justifies the use of deadly force. And while the officers could have put in their declaration something like he was reaching for my gun, he tried to hit me, I feared for my life, I feared for the life of others, they didn't do so. There simply is nothing in the record to support that claim. And even if that is something that arises later on during testimony, sure, the jury can change the outcome here. But the question is only what to do with this extremely early interlocutory posture where we have a motion for summary judgment made before discovery. And under those circumstances, the question is what does the record show? Is the movant entitled to relief as a matter of law under Rule 56A? And here, the only two pieces of evidence attached to the motion for summary judgment in support of summary judgment here were the declaration of Officer Caraballo and the video. And together, those simply don't resolve all of the relevant factual disputes to demonstrate entitlement to qualified immunity as a matter of law. And so the district court had no option but to deny qualified immunity in the motion for summary judgment at this early stage. Obviously, the denial was without prejudice. The district court decided that it could revisit this after discovery and the officer entitled to move. Let me ask you a question that's kind of curious to me. You did not sue Officer Ray. As I understand, he was the one who may have been teasing him, at least the sound of it, about the time he was being punched. Is that because you assessed that maybe his conduct was constitutional? Your Honor, I wasn't the counsel below, so I wasn't involved in making those decisions. But I don't think it's fair to assume that the failure to include him as defendant or the decision to only focus on Officer Caraballo's gratuitous conduct is an admission that the teasing was constitutional, especially given the clarity of the case law in cases like the state of Armstrong, actual Armstrong. I mean, was there a disputed fact as to whether your client was handcuffed? Your Honor, I think that the district court concluded that it was unclear from the video exactly when he was handcuffed. I don't think that's necessary. The court doesn't need to reach that question in order to conclude that the relevant question here, whether Lewis was sufficiently under control, that he no longer represented a flight risk and no longer represented a threat to the officers or anyone else, that's the relevant inquiry, as this court explained in Vidares. And under that, there certainly is a factual dispute about whether Lewis, who was on his hands and knees on the ground with an officer on top of him holding him down, was sufficiently subdued and sufficiently under control that he no longer, if he ever did, posed a threat to the officers or to anyone else. And given the concessions on the other side, that if the facts here show that he was controlled, that he was subdued, that he was not a threat, that he was not a flight risk, then the use of force here would have been excessive. I don't really see how there's anything left of this case, because the video certainly doesn't contradict that claim, much less so blatantly that it would justify this court's departing from the district court's conclusions. And neither does anything in Officer Carabello's declaration at JA 35. Does the reasonably established prongs somehow alter the analysis? Let's assume for the moment that there's a disputed issue of fact as to whether or not your client was fully secured. The next question is whether Trooper Carabello knew or reasonably knew that he was secured, such that he was on notice that his use of force was unlawful. So if you look at it in that context, what's the case that makes it clear to Carabello that he should not have acted as he did in this circumstance? I think there are a number of cases here. Focusing on the question of whether Lewis was under control, I think one of the clearest cases on point is this court's case in Valladares v. Cordero in 2009, where the court denied qualified immunity because there were factual disputes about whether the suspect was under control because they were pinned by officers at the time the relevant force was delivered. All right, but your client wasn't pinned, so it's not directly on point. I certainly don't accept that characterization of the video. I mean, I think the district court found that a reasonable fact finder could conclude that Lewis was at least partially subdued during all of these. So where's the case that shows that it's reasonably established that an officer is not entitled to use escalate force for a partially subdued individual? Your Honor, I think Valladares is that case. The suspect there was under the control of the officers, and that was the relevant question. This court in Armstrong and other cases has explained that it doesn't matter whether the suspect verbally agrees that they were compliant. It doesn't matter if the suspect was handcuffed. The question is simply... And wasn't that, and you can correct me if I'm wrong, but wasn't that the case where a number of officers then came up after he was subdued and punched the, I guess it was a suspect, multiple times? Is that that case? So Valladares was a case in which an officer slammed a 15-year-old's head into a car after he was under control. There were other officers involved, and those officers... I mean, that's pretty gratuitous. I mean, here we've got an officer still in the fight, so to speak, trying to subdue what you have conceded, at least admit, well, I don't want you to concede anything, a partially subdued individual. That's a different set of facts than that scenario there. And I get the point that we don't look to a case on all fours. But on the other hand, if you start straying away from the facts of this case, then an officer may never get qualified immunity if you can point to any case, no matter how different on the facts. So two points on that, Your Honor. First, I think the district court's conclusion that he was at least partially subdued implies that there were factual disputes about the degree to which he was under control. And those are the same exact factual disputes that resulted in the denial of qualified immunity in Valladares. Second, I don't think that the court needs to conclude that Lewis was subdued in order to find that qualified immunity is inappropriate here. This court explained in Thomas v. Hawley, which is an unpublished opinion but is still persuasive, that it was already established as far back as 2013 that punches to the back of the head, repeated punches to the back of the head, were the kind of serious, injurious, or deadly force that could only be used when an officer imminently feared for his life or his physical safety or the life or safety of someone else. And given that there is a factual dispute in the record about whether the officers here did so fear and that there's no evidence in the record that would contradict any part of that analysis and there's no evidence in the record that shows that the officers did fear for their lives, I think this court can simply conclude that in the circumstances presented here when you have an unarmed minor suspect suspected of a misdemeanor who does not pose an imminent threat to the officers or anyone else, that in those cases the officers cannot simply punch that person repeatedly in the head and especially in the back of the head. I don't think that's a particularly controversial claim and I think it's well established by this court's precedent and by a consensus of other circuits even without relying on the unpublished opinion in Thomas v. Hawley. And applying that analysis, I mean, the salient facts for that claim are clearly proven by the video below. It shows Lewis on the ground on his hands and knees being held down by another officer and it shows Officer Caraballo walk over to the front of his head and then punch him while he was facing the ground four to five times with at least one of those punches landing on the back of his head. And far from disproving his claims, Officer Caraballo's declaration corroborates them. He admits to executing four to five strikes to Lewis's head area. And so nothing in the record is inconsistent with the facts that underlie the core part of Lewis's claim such that qualified immunity can be denied at this extremely early stage. Does the extent of the injury to the individual who was the subject of the blows matter in the analysis as to excessive force? This court has considered as part of the analysis as sort of an auxiliary to the Graham factors. Here, Lewis did allege serious injuries and permanent injuries. But the court doesn't even need to reach that here because the Graham factors are so clearly in Lewis's favor. If you accept the facts as the district court found them, which the court must do at this stage, the record shows that Lewis was not a danger to anyone else. He was walking alone in a parking lot away from anyone that he might have been a threat to when two officers tackled him without warning, beat him, and then punched him repeatedly in the head. And under those circumstances, there just is really no question that the Graham factors resolve cleanly in favor of excessive force. And given that, I think the court doesn't even need to reach the sort of tie-breaking factor of whether there were serious injuries. But again, the extent of his injuries is largely unknown at this stage. When do you think the officers escalated the force to a level beyond reason? Your Honor, without conceding anything, we focused here on the punches because they were the most gratuitous elements of the use of force. I think that there are arguments that the use of excessive force started earlier, and the district court certainly didn't rule those out. But like the district court, we focused on the punches here as the use of excessive force, and we haven't briefed any other. So we're not relying on any of the other uses of force as a basis for affirmance here. I'd like to briefly address one claim made by the other side, that the plaintiff didn't present any evidence here, and so must not be able to receive a decision here that denies qualified immunity. And that simply is a misreading of this court's precedent and a misunderstanding of the summary judgment standard. Under Rule 56A, the movement for summary judgment needs to establish entitlement to a relief as a matter of law by showing that there are no genuine disputes as to any material fact. And this court has held that in pre-discovery summary judgment motions, even when the non-movement fails to respond to those motions at all, there's no response, not to mention no evidence submitted, the court can still only grant the motion for summary judgment if the evidence attached to the summary judgment motion, which constitutes the entire record, demonstrates an entitlement to relief under that standard. And here the district court correctly analyzed the affidavit, and correctly analyzed the video, and determined that they didn't unambiguously resolve the factual disputes in favor of Officer Carabello, and thus had no choice but to deny summary judgment and let the case proceed in the ordinary course. There just simply wasn't another option at this extremely early stage in litigation where there had been no discovery. And the lack of discovery here also speaks to the question of Lewis's injuries. Because there had been no discovery, because there had been no medical experts, there had been no medical reports introduced, we simply just don't have as much evidence as the court normally would see at the summary judgment stage. And so the district court denied the motion without prejudice, and said if facts enter the record, if the case develops through depositions, and through expert testimony, and through medical records, the situation might change. And so they're free to bring that motion again at a later stage, and then can appeal if it's denied again. But at the current stage, given how little was in the record, there just simply isn't any basis on which to grant qualified immunity. If the court has no further questions. Thank you very much. Mr. Ficus. I'm not exactly sure how much time I have left. I guess the clerk is due. Thank you. I think it's problematic for Mr. Lewis's attorney to stand up here and say what may have happened. He may have been handcuffed. He may have had a serious injury. He had the right to present evidence at summary judgment. If there's a serious injury, that's in his control. They're talking about the need to discover that. They could have put in medical records. They could have put in an affidavit that said I had a traumatic brain injury. I had this serious injury. I was handcuffed. None of that happened. And, yes, maybe that doesn't outright fail to meet the Rule 56 standard, but what it does mean is that they can't draw any inferences based on these gaps. So what we get back to is a case that's on video, and, yes, not everything's clear. But what I would stress is even if you take the worst possibility from the gaps of the video, you still do not get to excessive force, and that's especially true when you look at the second prong of qualified immunity. So the court has focused on whether or not Mr. Lewis was actively resisting when the face strikes and tasers occurred. And I would suggest the video does show that. Excuse me, though, counsel. Doesn't the video show that he was certainly the young man was still active? Yes. I mean, there's movement, unquestionably, movement, significant movement. But whether that movement constituted resistance, isn't that a question for the jury? I would suggest the reason that maybe it is, but what bows me out on that, is the clearly established law. If you look at the clearly established law, Jones v. Buckingham, the force used was after the suspect was handcuffed. Yates v. Terry, the suspect had been tased and was lying on the ground in Valdez. The question is, though, isn't it, whether the suspect has been subdued? Because the question of arrest is more of a question of formality, isn't it? Isn't it whether he was subdued? I agree. And this young man was still moving, no question, but how do we say whether he was subdued or not within the meaning of the law? Because the prior case law says there must be a high level of submission to get to a point where an officer using force to effectuate a detention is using unreasonable force. They have to be completely compliant. We know that wasn't the case here. They have to have been handcuffed. We know that isn't the case here. They have to have been tased. We know that wasn't the case here. And the same thing is true with deadly force. And, again, if this case comes down to whether there was an inadvertent strike to the back of Mr. Lewis' head, that is completely contrary to any case law. Yes, it's possible there was an accidental or incidental strike, but that certainly doesn't elevate the case to deadly force. And every single case they rely on, almost without exception, the strikes to the back of the head involve a flashlight or a baton. The one exception is a case out of Las Vegas, but it was open-hand strikes to the back of the head, but the suspect had been handcuffed in that case. Do you maintain that a suspect has to be handcuffed in order to be considered restrained? Absolutely not, Your Honor. But I maintain that if the... So what less than handcuff would be sufficient to establish restraint or subdue, in the words of Judge Keenan? Compliance from the suspect. No more actual act of resistance, and it's from the point of a reasonable officer. As Judge Keenan has said... I understand that. You say compliance by the suspect. If one has someone in a restraint, let's say threw them up against a wall, and they basically can't do anything, they're not handcuffed, is that a restraint? Yes. I am certainly not advocating a bright line of handcuffing. The case law, without question, supports the possibility of submission prior to handcuffing. But it's usually suspects who are lying on the ground, have officers sitting on top of them, have been tased, or in some cases have been handcuffed. And I would suggest no matter how you look at that video, we cannot get to the level of submission that those cases require for purposes of qualified immunity. If the Court has no other questions, I'll sit down.  I appreciate the arguments of counsel. We'll come down to review and then move on to our second case.
judges: Albert Diaz, James Andrew Wynn, Barbara Milano Keenan